UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 10-10767 |
| ADVOCATE FINANCIAL, LLC | * | Chapter 11 |
| Debtor | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO APPOINT A TRUSTEE

MAY IT PLEASE THE COURT:

Sufficient "cause" exists under 11 U.S.C. § 1104(a)(1) to appoint a Chapter 11 Trustee because the Debtor has engaged in various forms of fraudulent and dishonest conduct including, but not limited to making material misrepresentations for financial gain, knowingly concealing and/or failing to disclose material information related to its assets, and transferring assets to affiliated entities/persons. Additional "cause" exists under 11 U.S.C. § 1104(a)(1) in that the Debtor's sole member is irrevocably conflicted from impartially dictating the administration of the Debtor's estate. Finally, to the extent this Court does not believe that sufficient cause exists under Section 1104(a)(1), then appointment of a Trustee under 11 U.S.C. § 1104(a)(2) is in the interests of the creditors.

## LAW AND ARGUMENT

Section 1104(a) provides several non-exclusive circumstances in which this Court can appoint a chapter 11 trustee to take over the administration of the Debtor's estate. As discussed more fully below, the first and second subsection of 1104(a) are applicable here and mandate the appointment of a chapter 11 trustee.

A. **"Cause" exists under Section 1104(a)(1) for the Appointment of a Chapter 11 Trustee**

Section 1104(a)(1) states that a trustee shall be appointed upon a showing of "cause," which includes, "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar

cause. . ." In addition to fraud and mismanagement, the Fifth Circuit has concluded that "cause" can also exist upon a finding of an "actual conflict of interest."[1] Other courts have noted that any attempt by a debtor to conceal material information from the court or the creditors also constitutes "cause" to appoint a trustee under subsection (a)(1).[2] As the above language makes clear and as the official legislative statements to Section 1104(a)(1) further illustrate, the temporal reference point for the subject conduct is irrelevant; a trustee should be appointed even if the questionable conduct did not occur post-petition.[3] However, in this case the Debtor's post-petition conduct in handling the case is consistent with its pre-petition conduct towards Hancock Bank, either of which merit the appointment of a trustee.

While appointment of a chapter 11 trustee has been described as an "extraordinary" remedy,[4] courts have also noted that Section 1104, ". . . represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in possession."[5] The burden is on the movant to prove the need for the appointment of a trustee by clear and convincing evidence.[6] The Court must make this fact-sensitive determination on a case-by-case basis.[7] "A determination of whether cause exists to

---

[1] *In re Cajun Electric Power Co-op., Inc.*, 191 B.R. 659, 661 (M.D.La.1995), *vacated by Matter of Cajun Electric Power Co-op., Inc.*, 69 F.3d 746, 749 (5th Cir.1995), *reversed and aff'md on rehearing by Matter of Cajun Electric Power Co-op., Inc.*, 74 F.3d 599 (5th Cir.1996) (en banc); *see also In re New Towne Development, LLC*, 404 B.R. 140, 149 (Bankr. M.D.La. 2009) (citing same).
[2] *In re Savino Oil & Heating Co.*, 99 B.R. 518, 526 (Bankr.E.D.N.Y.1989) ("[w]here, as here, the Debtor fails to disclose material and relevant information to the Court and creditors, a Chapter 11 trustee is required."); *see In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir.1988) ("It is also established that failure to keep adequate records and make prompt and complete reports justifies the appointment of a trustee."); *see also In re Sanders*, 2000 WL 329574, at *4, 2000 Bankr. LEXIS 263, at *11 (Bankr.N.D.Ill. March 2, 2000) ("Where a debtor fails to disclose material information to the Court and to the creditors, the appointment of a chapter 11 trustee is appropriate. Misrepresenting the facts of a debtor's financial situation constitutes grounds for the appointment of a trustee.").
[3] "For example, if the current management of the debtor gambled away rental income before the filing of the petition, a trustee should be appointed after the petition, whether or not postpetition mismanagement can be shown." Legislative statement to 11 U.S.C. § 1104(a).
[4] *In re Altman*, 230 B.R. 6, 16 (Bankr.D. Connecticut 1999) (citing legislative history to Section 1104(a))
[5] *Savino Oil*, 99 B.R. at 525; *see also Sanders*, 2000 WL 329574, at *2, 2000 Bankr. 263, at *8; *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr.N.D.Ill.1994).
[6] *In re Cajun Electric*, 74 F.3d at 599; *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir.1989).
[7] *In re Bellevue Place Assocs.*, 171 B.R. 615, 622-23 (Bankr.N.D.Ill.1994).

appoint a Chapter 11 Trustee is within the discretion of the court and due consideration must be given to the various interests in the bankruptcy proceeding."[8] Once a movant meets its burden however, the appointment of a trustee is mandatory.[9]

### 1. The Debtor's pre-petition conduct towards Hancock Bank merits the appointment of a Trustee.

As will be proven at the hearing on the Motion, the Debtor made numerous material misrepresentations to Hancock Bank and/or knowingly concealed information or failed to disclose information related to its assets. For instance, under Hancock Bank's loan documents, the Debtor was required to provide monthly financial information to Hancock Bank relative to the Debtor's outstanding loans to its clients. The information provided by the Debtor was materially false and misleading. Additionally, the Debtor transferred its assets to affiliated entities in violation of express agreements with Hancock Bank to refrain from doing so.

### 2. The Debtor's ownership and management are irreconcilably conflicted with the interests of the Debtor, justifying the appointment of a Trustee.

The Debtor's ownership/management structure and pre-petition financial transactions create a conflict which prevents any impartial administration of the Debtor's estate and which conflict is apparently the source of many of the Debtor's misrepresentations and actions to date. As noted in the Motion, the Debtor's sole member is another Louisiana limited liability company, La Chenaie Holding, LLC. That company is owned, in turn, (as recently alleged by the Debtor ) by a French corporation, Sofra, S.A.[10] According to the February 28, 2009 monthly

---

[8] *Bellevue Place*, 171 B.R. at 623.
[9] 11 U.S.C. § 1104(a)(1); *see also Savino Oil*, 99 B.R. at 525.
[10] In a Notice of Removal filed by the Debtor and La Chenaie, in Hancock Bank's collection suit (Civil Action No. 10-00132, pending in the United States District Court for the Middle District of Louisiana) the allegation was made that La Chenaie Holding, LLC is owned solely by "Sofra, S.A. an alien corporation, namely a French corporation and a 'societe anonyme'." However, as recently as February 2009, La Chenaie Holding LLC appears to have been owned/operated by another French corporation, S.A.S. Bethune Borghese. How and when Sofra, S.A. became the owner/operator of La Chenaie Holding LLC is unknown.

financial statement delivered by Advocate Financial to Hancock Bank, Advocate Financial owed La Chenaie $6,706,729.49 as of that date. However, according to the schedules filed by the Debtor in this case, the Debtor had reduced its indebtedness to La Chenaie to $3,907,139.00 as of the petition date, March 2, 2010, a little over one year later. Thus, the potential preference owed by La Chenaie to the estate is huge -- $2,799,590.45.[11] The Debtor even acknowledges in its Statement of Financial Affairs that it paid approximately one-half of that amount to La Chenaie. Specifically, in its answer to question 2(b), the Debtor states that La Chenaie received $1,315,501.35 within 90 days of the Petition. However, the Debtor clearly fails to correctly answer question 2(c) as it uses the same number ($1,315,501.35) as having been paid within one year of the petition. As the financial information delivered to Hancock Bank reveals, the answer to question 2(c) is significantly larger. Regardless, the size of the preference places the current management of the Debtor in a position of irreconcilable conflict with the best interests of the estate. As the Third Circuit concluded in *Sharon Steel*,

> "The magnitude of the number of inter-company transactions [exceeding $1 million] places current management of [Debtor] in a position of having grave potential conflicts of interest and the presumption arises that the current management of [Debtor] will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing inter-company claims on behalf of [Debtor]." [12]

The same applies to the current case; an independent Trustee is needed to replace the current management that is irreconcilably conflicted.

    3.    **The Debtor's post-petition conduct reveals further cause for the appointment of a Trustee.**

That the interests of the Debtor and the interests of the Debtor's ownership are irreconcilably conflicted is further bolstered by the Debtor's post-petition conduct and its lack of

---

[11] Additionally, during the year previous to this year (July 31, 2008 to February 28, 2009), Advocate made unauthorized principal reductions on La Chenaie's debt totaling $3,293,270.51.
[12] 871 F.2d at 1226-29 (*citing In re L. S. Good & Co.*, 8 B.R. 312, 315 (Bkrtcy.W.Va. 1980).

candor and disclosure to the Court with regard to its assets, particularly those assets connected to La Chenaie and the French owners. For example, Judge Magner entered an order on March 12, 2010 (Docket No. 39) that required the Debtor to return to its DIP account certain funds it had transferred pre-petition to an overseas deposit account. The Debtor attempted to explain by letter dated March 15, 2010 (attached as Exhibit "A"), that the Debtor should be excused from compliance with this order because during the same period of time the Debtor had expended as much money as had been deposited into that overseas account. From where those funds came, from what account those expenses were paid, and/or how the Debtor paid the same was not disclosed. Judge Magner found the Debtor's explanation to be unsatisfactory and required by memo (Docket No. 62) that the Debtor provide a more complete accounting.

A copy of a portion of the Debtor's subsequent accounting is attached as Exhibit "B." However, as illustrated below, this "more complete" explanation raises many issues, including:

- According to the attached accounting, the Debtor has an account with a French bank, "Neuflize OBC" which as of January 31, 2010 had a balance of $714,422.09. Yet nowhere in the Debtor's schedules or statement of financial affairs is this bank account mentioned nor has the Debtor provided any amendment to the schedules and statement of financial affairs to acknowledge the ownership of this account or the balance that existed in the account as of the date of the petition;

- The Neuflize bank statement further reflects two transfers by the Debtor out of this account to La Chenaie: one for $700,000 on February 1, 2010 and a second for $190,451.35 on February 9, 2010. Whether these transfers are included in the $1,315,501.35 disclosed by the Debtor is unclear;

- The attached accounting summary reflects two $5,000 transfers to Delinda Dowden (the sole employee of the Debtor) for "office expenses" (one on February 12, 2010 and a second on March 9, 2010) where, according to the attachments to the accounting (the "Avis D'Operation"), the wires were apparently made into Delinda Dowden's personal account at Campus Federal Credit Union;

- The cover summation provided by the Debtor attempts to claim credit for a $68,035.00 payment from another entity, "Sofra" (presumably the owner of La Chenaie Holding, LLC) to a certain French law firm, "Lartigue-Tournois-

Associes." If the legal invoice was in fact an expense of the Debtor, why was it paid by Sofra? The Debtor does not explain.

Other issues exist. For example, the June 30, 2009 audited financial statement of the Debtor provided by Malcolm M. Dienes, LLC (a copy of which is attached as Exhibit "C"), describes the Debtor's collection efforts against the "Waldmann Interests" noting that those efforts led to the Debtor and Waldman forming "the Waldmann Interest Limited Partnership into which [Advocate] contributed certain Waldmann Law Firm notes and client notes to the partnership and took an assignment of future distributions." Neither the schedules nor the statement of financial affairs reference any interest of the Debtor in this partnership nor an assignment of future distributions.

All of the above provide a glimpse at the Debtor's overall general reluctance to provide complete and timely information to either this Court or its creditors. More seriously, the above evidences a critical need for the appointment of a trustee in this case. In sum, "cause" exists under 11 U.S.C. § 1104(a)(1) and this Court, upon hearing the full evidence available to Hancock Bank in support of this Motion, should appoint a Chapter 11 Trustee to fairly administer the Debtor's estate.

B. **Appointment of a Trustee is in the Interests of Creditors under 11 U.S.C. § 1104(a)(2)**

Even if this Court finds that "cause" under § 1104(a)(1) does not exist, the facts of this case prove that the appointment of a trustee is "in the interests of creditors, any equity holders, and other interests of the estate" under Section 1104(a)(2). Courts applying Section 1104(a)(2) have concluded that they have much more discretion in deciding whether a trustee should be appointed, than when under subsection (a)(1).[13] Specifically, in *Sharon Steel*, the court aptly noted that subsection (a)(2) creates a "flexible standard" and "emphasizes the court's

---
[13] *Bellevue Place,* 171 B.R. at 623.

discretion."[14] Thus, while the case law applying subsection (a)(2) has relied on various factors in considering whether appointment of a trustee is "in the interests of creditors," a least one court has succinctly summarized that,

> . . . the factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion. In essence, however, it seems that § 1104(a)(2) reflects 'the practical reality that a trustee is needed.'[15]

As will be shown at the hearing, that point is additionally applicable here: the appointment of trustee in this case is the only practical way of assuring the creditors that the assets of the estate are being protected by an independent fiduciary, which fiduciary can also be involved in the ultimate decision of whether the debtor can reorganize or if a liquidation is in the best interests of the creditors. Indeed, without the appointment of a trustee in this case, there will be no independent assurances that the assets of the estate are either being accounted for or put to their best use.

Additionally, the level of acrimony between the Debtor's current management and Hancock Bank (apparently one of only 2 creditors in this case with a significant claim) has already made this case extremely difficult and expensive, reducing the likelihood of a successful reorganization. At least one court has found this to be additional grounds for appointing a trustee.[16] The Debtor's past and ongoing behavior illustrates that it is unwilling to operate with a sufficient level of disclosure or candor that is required of it as a fiduciary of the estate and the creditors.[17] Ultimately, the only practical way to ensure a just and fair administration of this case

---

[14] *Sharon Steel*, 871 F.2d at 1226.
[15] *Savino Oil*, 99 B.R. at 527, n.11 (*citing In re Sharon Steel Corp.*, 86 B.R. 455, 458 (Bankr. W.D.Pa. 1988)).
[16] *See In re Marvel Entertainment Group*, 140 F.3d 463, 472 (3rd Cir. 1998) (*citing Cajun Electric*, 74 F.3d at 600).
[17] 11 U.S.C. §§ 1106, 1107; *see also Bellevue Place*, 171 B.R. at 623 (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 200 n. 3, 103 S.Ct. 2309, 2311 n. 3, 76 L.Ed.2d 515 (1983) (the debtor in possession occupies the shoes of a trustee in every major way) and *Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir.1987) (debtor in possession or trustee must satisfy its fiduciary duty to the debtor, creditors, and equity holders)).

is for this Court to exercise its broad discretion under Section 1104(a)(2) and appoint an independent trustee.

## CONCLUSION

At the hearing on its Motion to Appoint a Trustee, Hancock Bank will present testimonial and documentary evidence to this Court clearly proving that "cause" exists under 11 U.S.C. § 1104(a)(1) for the appointment of a chapter 11 trustee in this case. Alternatively, to the extent that this Court finds that "cause" does not exist under subsection (a)(1), the evidence presented will establish that appointment of a trustee is appropriate under 11 U.S.C. § 1104(a)(2).

Respectfully submitted,

_____
Stephen P. Strohschein, LA Bar Roll # 12541
E. Stewart Spielman, LA Bar Roll #28766
Lillian Luffey Paxton, LA Bar Roll #31847
**McGlinchey Stafford, PLLC**
One American Place, Fourteenth Floor
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
Facsimile: (225) 343-3076

ATTORNEYS FOR HANCOCK BANK OF LOUISIANA