# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: ADVOCATE FINANCIAL, L.L.C. | * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION <br><br> NO. 10-10767 |

**************************************************************************

## OPPOSITION TO MOTION TO APPOINT TRUSTEE

MAY IT PLEASE THE COURT:

      The relief sought by Hancock Bank ("Hancock") in the appointment of a trustee in this Chapter 11 bankruptcy is both extraordinary and unwarranted. Bankruptcy rules favor the debtor-in-possession in a Chapter 11 proceeding. Moreover, for those concerns expressed by Hancock, including alleged preference actions and the proper overseeing of the estate, there are either already measures in place to address Hancock's concerns or the bankruptcy court is afforded less drastic measure to address these matters. Finally, as will be shown during the hearing on this motion, the allegations set forth in Hancock's motion are simply that, unsupported allegations that do not substantiate its claim for the appointment of a trustee under Section 1104.

**I.    General Standards**

      The Fifth Circuit in *In re: Cajun Electric Power Co-Op, Inc.*, 191 B.R. 659, 661 (M.D.La. 1995), *vacated by Matter of Cajun Electric Power Co-Op, Inc.*¸ 69 F.3d 746, 749 (5th Cir. 1995), *reversed and aff'md on rehearing by Matter of Cajun Electric Power Co-Op, Inc.*,

74 F.3d 599 (5th Cir. 1996)(en banc) set forth the standard that must be met for having the court appoint a trustee in a Chapter 11 proceedings. As noted, §1104(a)(1) provides that a court shall order the appointment of a trustee-

> for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause....

As noted in *Cajun Electric*...

> The appointment of a trustee pursuant to §1104(a)(1) is an extraordinary remedy, and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee. *Cajun Electric* at 745.

Under §1104(a), the party moving for appointment of a trustee must prove the need for a trustee under either subsection by <u>clear and convincing</u> evidence. *See Sharon Steel,* 871 F.2d 1217, 1226 (3d Cir. 1989). "*It is settled that appointment of a trustee should be the exception, rather than the rule.*" (emphasis added.) *Id.* at 1225. In the usual Chapter 11 proceeding, the debtor remains in possession throughout reorganization because "...current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 524 (Bankr.E.D.N.Y.1989). The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization. *See Sharon Steel,* 871 F.2d at 1226. *See also: G-I Holdings, Inc.,* 295 B.R. 502, 509 (D.N.J. 2003) wherein the District Court found the bankruptcy court to have correctly applied this presumption in favor of the debtor's management and denied a motion to appoint a trustee. As will be shown, the

2

Debtor's management successfully operated the affairs of the Debtor for years until Hancock unilaterally terminated its loan.

Moreover, as a general rule, "*... a trustee will not be appointed where affiliate transactions are called into question, unless the movant can demonstrate that the transactions were improper, detrimental to the debtor estate, or were actually fraudulent*." (emphasis added.) Norton Bankruptcy Law & Practice § 53.04; s*ee also: General Oil Distributors,* 42 B.R. 402 (Bankr.E.D.N.Y. 1984); *In re Allsun Juices,* 34 B.R. 162 (Bankr.M.D.Fla.1983). As set forth below and as will become evident during the hearing of this matter, Hancock cannot meet the requisite heightened standard for the appointment of a trustee. As the presumption assumes, it is in the best interest of all creditors that Advocate, as the party with the most knowledge regarding its operations, should remain the Debtor-in-Possession in this matter. Hancock's motion should be denied.

**II.** **Concerns regarding the pursuit of preference actions or "acrimony" between the creditors and the estate do not amount to cause for a trustee under either §1104(a) or §1104(b).**

In an attempt to establish "cause" under §1104, Hancock cites to the existence of alleged "acrimony" between itself and Advocate and its self-serving concern that certain preference actions will not be pursued without the appointment of a trustee. Even if true, neither of these arguments supports the appointment of a trustee under §1104. *See In re: Royster Company,* 148 B.R. 88 (Bankr. M.D.Fla. 1992); *G-I Holdings Inc., supra*.

First, similar to the case at hand, in *Royster*, a creditor of the estate sought appointment of a trustee arguing that the management of the debtor could not make fair, effective and equitable decisions regarding the debtor's assets and potential causes of action. In seeking the

3

appointment of a trustee, the movant called into question the propriety of a number of transactions between the Debtor and its affiliates. The movant argued that the appointment of a trustee was warranted because the "...debtor is so hopelessly involved with other interests, the affairs of the Debtor are so intertwined with management's own selfish interests, and management is using or have used their position to utilize funds of the Debtor to acquire property in which they hold a controlling interest, which entities are not involved as debtors in the Chapter 11 cases." *Id.* 89.

The court disagreed, finding that circumstances alleged by the debtor did not warrant the appointment of a trustee. While questioning some of the prior transactions between debtor and its various affiliated entities, the debtors were now operating under the strict rules governing the debtors-in-possession, and under the watchful eye of the creditor committee and the U.S. Trustee. *Id.* at 92. The court found the contention that the debtor would not be able to make a detached and objective review regarding transactions was without merit because any transaction going forward would be scrutinized by a number of other entities including the creditor committee, the lender group and by the U.S. Trustee and would have to be approved by the court. *Id.* at 91.

The court further noted that the concerns of the creditor would also be resolved by the terms of the plan of reorganization. Specifically, the court noted:

> In addition, there is no question that the Creditor's Committee is in a position to ensure that any Plan of Reorganization must contain a provision for the appointment of independent counsel who, post-confirmation, will have the right to investigate these transactions and if warranted, to pursue what actions might be appropriate against any of the non-debtor entities involved on behalf of the general estate and for the benefit of the unsecured creditors. In sum, this Court is satisfied that the Motion to Seek Appointment Of A Trustee Or, In The Alternative, An Examiner by Superfos is without merit and should be denied.

*Id.*

Likewise, the concerns alleged by Hancock that the debtor-in-possession will not pursue alleged avoidable transfers and that the debtor has an "...excessive conflict between it and its principal creditors..." is not sufficient reason to appoint a trustee under §1104. *G-I Holdings,* at 507. In *G-I Holdings*, a committee was set up to represent persons asserting tort claims against the debtor. Similar to the motion filed by Hancock in this matter, the Motion to Appoint Trustee filed in *G-I Holdings* advanced two main arguments: (1) that a trustee was needed to ensure the prosecution of fraudulent-transfer and preference actions; and (2) excessive conflict between the Debtor and its principal creditors warranted the appointment of the trustee. *Id.* at 508. Applying the standards discussed above, the bankruptcy court declined to appoint a trustee and its decision was affirmed by the district court.

Turning to the concern that certain preference actions would not be pursued by the debtor if a trustee were not appointed, the Court noted that "...bankruptcy courts can authorize creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of [a] debtors' estate." *Id.* at 511, *citing Official Committee of Unsecured Creditors of Cybergenis Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579-80 (3d Cir. 2003). Similarly, if the plan proposed by the Debtor does not adequately provide for the investigation of avoidable transfers and the pursuit of related preference actions, the Creditors Committee may on its own pursue the actions. There is no need for a trustee on this basis.

In support of its argument that there exists an "actual conflict of interest" sufficient to establish "cause" under §1104(a)(1), Hancock erroneously relies upon *Cajun Electric, supra.*, which is easily factually distinguishable from the matter before this Court. *Cajun Electric* involved very complex issues of utility regulation and impacted not only the Debtor and its

5

creditors, but also millions of consumers and taxpayers who would be directly affected by the outcome of the case. *Id.* at 664.  The actual conflict of interest identified by the *Cajun Electric* court arose between the board members of the Debtor.  The appointment of a neutral trustee was an absolute necessity under the facts of the case in order to preside in an objective and impartial manner to bring the case to a swift and successful conclusion.  *Id.* at 663.  In contrast, the proceedings before this Court involve a simple Chapter 11 bankruptcy with few creditors, whose outcome does not effect the provision of utility service.  The only alleged conflict identified is a common one, between a creditor of the estate and the Debtor.  As previously discussed, even if such a conflict does exist, jurisprudence does not support the appointment of a trustee on that basis.

Hancock's reliance upon *In re: Marvel Entertainment Group*, 140 F.3d 463 (3d Cir. 2006) for the proposition that "...acrimony between debtor and creditor in a bankruptcy case may rise to the level of cause necessitating the appointment of a trustee under §1104(a)" is equally misplaced.  Indeed, in *Marvel*, the Third Circuit expressly held that "*...there is no per se rule by which mere conflicts or acrimony mandate the appointment of a trustee."* *Id.* at 473.  Instead, it was only after an intensive factual analysis that the district court concluded the circumstances in total warranted the appointment of a trustee.

The circumstances present in *Marvel* warranting the appointment of the trustee are not present here. Those circumstances included:  (1) the debtor-in-possession's institution of several adversary actions, (2) the unconsummated settlements, (3) the U.S. Trustees' opinion "that the parties seem unable to reach consensus," and  (4) its observations that "the Debtors and the Lenders have flung accusations at each other, and have failed to demonstrate any ability to resolve matters cooperatively." *Id.*

In *G-I Holdings*, applying *Marvel*, *supra*, the District Court noted citing to the bankruptcy judge's opinion, "[T]here is a fine line between bitter acrimony and healthy conflict between the parties. This Court finds, in reviewing this record in its aggregate form, that there does not exist what the Third Circuit in [*Marvel*] described as "unhealthy conflict." *G-I Holdings,* at 511.

The District Court further noted, "The mere existence of the adversary proceedings, therefore, does not amount to cause for a trustee under §1104(a) or otherwise favor a trustee under §1104(a)(2)." *Id.*

The matter before this Court is not a complicated bankruptcy. It is a simple Chapter 11, with few creditors. As will be seen at the hearing on this matter, the allegations made by Hancock regarding claimed wrongful conduct of the Debtor in support of its Motion, are unsupported and false. Hancock can not meet its burden under §1104 and therefore, the Court must deny Hancock's Motion, thereby allowing Advocate to proceed as the Debtor-in-Possession.

**III.  As testimony will show at the hearing of this matter, Hancock cannot meet its burden under §1104.**

Hancock divides its Motion into three broad areas which will be addressed in turn in this memorandum but more completely by testimony of a representative of the Debtor at the hearing on this matter. It is interesting to note that several areas of inquiry were in fact addressed at the Initial Meeting of Creditors held on July 9, 2010 wherein the Debtor responded to questions from Hancock's representative.

### 1. Alleged Pre-Petition Conduct

Hancock has failed to specify what, if anything, was "materially false and misleading" in any pre-petition financial information furnished by the Debtor to Hancock as part of the loan documents. As such, it is not possible to respond more fully at this time. As to the vague allegations concerning transfer of assets, presumably referring to wire transfers from the Debtors accounts, the Debtor will show that such transfers were approved in advance by the Hancock loan officer in charge of the loan. The disclosure and approval process was followed with respect to every transfer except perhaps one transfer made in February, 2010 which occurred after Hancock wrongfully seized another one of Debtor's accounts.

### 2. Alleged Ownership and Management Conflicts

As clarified at the Initial Meeting of Creditors, the Debtor is wholly-owned by La Chenaie Holding, LLC which is owned by Sofra, S.A. S.A.S. Bethune Borghese is currently a sister entity of La Chenaie. Hancock's alleged need for further information is not the type of matter for which a Motion to Appoint a Trustee should be filed, but rather is easily clarified at the Meeting of Creditors. The ownership structure was fully explained to Hancock's representative at the Meeting of Creditors.

As to the pre-petition transfers and possible avoidance action, these will be addressed in the Debtor's Disclosure Statement and Plan of Reorganization once filed. The mere existence of related entity transfers is insufficient conduct to rise to the level of cause. In fact, complex intercompany transactions are increasingly the rule, rather than the exception.. *See for example: In re: Adelphia Communications,* 336 B.R. 610 (Bankr.S.D.N.Y. 2006), and its discussion of the treatment of significant Chapter 11 filings involving intercompany transactions. As was also noted in *G-I Holdings* it is not uncommon for a Creditors Committee to be assigned rights to

pursue potential preferences. The facts in this matter, however, are that the transfers were disclosed in the schedules and any further details could have been obtained at the Meeting of Creditors.

### 3. Alleged Post-Petition Conduct

Hancock refers to several actions post-petition that it believes justifies appointment of a trustee. But it leaves out the most important facts. At a status conference, Hancock mentioned to the Judge that the Debtor had transferred monies to France and Judge Magner ordered that the monies returned and that an accounting be made to the attorney for the U.S. Trustee's Office, Ms. Mary Langston. Upon investigation, the transfers were reimbursements to Sofra for debts it paid on the Debtor's behalf. In fact, Sofra has not been fully reimbursed for payment of Debtor's expenses, including fees to Debtor's pre-petition accountant and to acquire new software to track loans and generate cash reports for Hancock. Debtor's expenses exceeded the total sum transferred by more than $75,000.00 during that time period. This information was provided to Ms. Langston in a detailed letter dated March 15, 2010, as per the orders of the Court, and copied to Hancock. Ms. Langston, who attended the status conference when this order was issued, was satisfied with the explanation provided by the Debtor.

At a subsequent status conference, Hancock told Judge Magner that it was not satisfied with the Debtor's explanation and that it wanted additional information beyond the one-month period prior to the filing of the bankruptcy. Again, the Debtor complied, furnishing to the U.S. Trustee's attorney a full explanation and all documents that the Court directed be provided with a copy to Hancock. The attorney was again satisfied with the Debtor's response. Debtor complied with both of Judge Magner's orders completely and to the full satisfaction of the U.S. Trustee's Office.

Still not satisfied with the Debtor's accounting, several bullet points are raised in Hancock's memorandum. Debtor provides a brief response to those points in order:

- The account with Neuflize OBC had a balance of slightly more than two dollars as of the date of filing of the petition in bankruptcy. The Debtor's schedules are being revised to add this account, as well as to delete certain accounts that were closed before the filing of the petition and inadvertently included as active accounts.

- As addressed at the Meeting of Creditors, the transfers were included in the $1,315,501.35 listed in the schedules. Again, Hancock's need for clarification does not amount to cause for appointment of a trustee and all of Hancock's questions on this issue were fully answered.

- The transfers were made to provide operating funds for current expenses necessitated by the wrongful seizure by Hancock of Debtor's accounts. This new account served as a temporary operating account. A journal listing of the payments from these accounts will be provided at the hearing on this matter. The uses of the funds are very similar to those approved in the order issued by this Court concerning the interim use of cash collateral. Again, these questions could easily have been resolved at the Meeting of Creditors and do not amount to cause for appointment of a trustee. Hancock cannot show that it made any inquiry into these issues prior to filing this Motion.

- The payment of the French law firm by the Debtor's ultimate parent, Sofra was a transaction in Euros for the convenience of all involved. This, again, is a point for clarification but not in itself cause. *See* the discussion in: *G-I Holdings,* set forth

previously. *See also, Marvel* ("there is no *per se* rule by which mere conflicts or acrimony mandate appointment of a trustee.")

As to the Waldmann Interests, this information was obvious to Hancock pre-petition in multiple audited financial reports. The interest appeared as a separate line item on each balance sheet provided to Hancock. The exact nature of the interest in this asset is complex but Hancock is, and has always been, aware of its existence. The Debtor will make further disclosure by an amendment to its schedules. Obviously, as this was disclosed to movant pre-petition, its inadvertent omission does not amount to cause.

Finally, as addressed above acrimony is to be expected. It is inconceivable that in a bankruptcy situation some acrimony would not exist between debtors and unpaid creditors. Mere acrimony cannot in itself, warrant appointment of a trustee, or else a trustee would be required in every proceeding. In this matter, any acrimony lies with Hancock, not the Debtor.

The Debtor furnished up-to-date financial information at the Meeting of Creditors and furnishes Hancock with a weekly cash statement. As such, Hancock is fully apprised of the current operations of the Debtor. Even Hancock concedes that the appointment of a trustee is an extraordinary remedy. *See e.g. Hancock's Memorandum in Support,* p2.

**Conclusion**

No reason exists in this case for the appointment of a trustee, especially at this early stage, before the Debtor has even had a chance to propose a Plan of Reorganization. The Motion should be DENIED.

Respectfully submitted,

BALDWIN HASPEL BURKE & MAYER, L.L.C.


BY: /s/ Lance J. Arnold      _____
DENNIS M. LABORDE (La. Bar No. 17979)
LANCE J. ARNOLD (La. Bar No. 18768)
STEPHEN P. SCHOTT (La. Bar No. 2096)
JENA W. SMITH (La. Bar No. 25255)
2200 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2200
Telephone: (504) 569-2900
Telecopier: (504) 569-2099
Attorneys for Advocate Financial, L.L.C.

375873