UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:     *     CASE NO. 10-10767
ADVOCATE FINANCIAL, LLC     *     Chapter 11
       Debtor     *
*************************************************************************

## OBJECTION TO INTERIM APPLICATION FOR COMPENSATION FOR THE PERIOD OF MARCH 1, 2010 THROUGH MAY 31, 2010 FILED BY THE LAW FIRM OF BALDWIN HASPEL BURKE & MAYER, LLC

MAY IT PLEASE THE COURT:

Hancock Bank of Louisiana ("Hancock Bank") files this Objection in response to the Interim Application for Compensation for the Period of March 1, 2010 through May 31, 2010 filed by the Law Firm of Baldwin Haspel Burke & Mayer, LLC, (the "Compensation Application") for the following reasons:

I. **BACKGROUND**

On March 2, 2010, Advocate Financial, LLC ("the Debtor") filed a Voluntary Petition in the Bankruptcy Court for the Eastern District of Louisiana under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The same day, the Debtor filed an application with that court to retain and employ the Law Firm of Baldwin Haspel Burke & Mayer, LLC ("BHBM") as its bankruptcy counsel and to also handle, among other things, various collection matters being prosecuted by the Debtor (the "Application to Employ").[1] Interim approval of BHBM's retention was granted on March 8, 2010 and a final hearing on the

---

[1] Application by Debtor for Entry of an Order Authorizing the Employment and Retention of Dennis M. LaBorde, Stephen P. Schott and the Baldwin Haspel Burke & Mayer, LLC, *In re Advocate Financial, LLC,* No. 10-10767, (Doc. No. 12).

same was initially set for April 13, 2010, but later continued to April 21, 2010.[2] On April 26, 2010, Judge Magner entered an Order granting the Debtor's application to employ BHBM.[3]

Around that same time, on separate motion by Hancock Bank, this Case was transferred to the Bankruptcy Court for the Middle District of Louisiana.[4] Hancock Bank has also filed a Motion for Relief from Stay, or in the alternative, Motion for Adequate Protection and to Prohibit Use of Cash Collateral, which has been set for final hearing on September 16 & 17, 2010, (the "Cash Collateral Motion").[5] In the interim, the Debtor has only been authorized to use $6,000 per month in cash collateral (with a 10% variance).[6] On June 30, 2010, BHBM filed its Compensation Application with this Court, pursuant to which it now seeks payment of interim compensation in the amount of $205,852.20 for services rendered to the Debtor for the period of March 1, 2010 through May 31, 2010. The Debtor remains in possession and control of the property of the estate as a "debtor in possession."

## II. LAW AND ANALYSIS

### A. *Applicability of and Standard under 11 U.S.C. § 330.*

While Section 331 of the Bankruptcy Code specifically deals with interim applications for compensation, it refers this Court to Section 330 for determining whether such compensation should actually be paid to the fee applicant.[7] Specifically, subsection (a)(1) of Section 330 provides that a court may award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." As the language of these provisions clearly

---

[2] Interim Order Authorizing the Employment and Retention of Dennis M. Laborde, Stephen P. Schott and the firm of Baldwin Haspel Burke & Mayer, LLC for DIP and Setting Final Hearing, *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 22).
[3] Order, *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 103).
[4] Order Transferring Venue, *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 1).
[5] Motion for Relief from Stay, or in the alternative, Motion for Adequate Protection and to Prohibit Use of Cash Collateral, *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 25).
[6] Minute Entry from June 4, 2010 hearing, *In re Advocate Financial, LLC*, No. 10-10767.
[7] Section 330 of the Bankruptcy Code governs final payment of compensation to a "a professional person employed under Section 327 or 1103." Section 327 explicitly allows for the Debtor's retention of "one or more attorneys" to assist the Debtor in administrating it case.

indicate, this Court must answer two questions to determine whether the amount of compensation being sought should be awarded: (1) are services/expenses actual and necessary? and (2) are the services/expenses reasonable?[8]

In considering the first question, the Fifth Circuit has indicated that fees/expenses are only "actual and necessary" if they provide an "identifiable, tangible and material benefit" to the estate.[9] Once a determination of "material benefit" is made, the court must then determine whether the amount of compensation being sought is "reasonable" by applying the "lodestar" method which involves multiplying the reasonable number of lawyer hours by the prevailing hourly rate, and then adjusting that amount with what is commonly known as the "*Johnson* factors."[10] The twelve *Johnson* Factors that must be considered when making these up or down adjustments have already been set forth by BHBM in its Compensation Application and, for the sake of brevity, will not be repeated here. That being said, while those factors are critical in determining the reasonableness of compensation, it should also be remembered that this Court has considerable discretion in awarding any attorneys' fees/expenses.[11] Indeed, under Section 330(a)(4)(A), courts are not to allow compensation for: "unnecessary duplication of services, or services that were not— reasonably likely to benefit the debtor's estate, or necessary to the administration of the case." Finally, and perhaps not surprisingly, the fee applicant bears the burden of proof under 11 U.S.C. §330.[12]

---

[8] 11 U.S.C.A. §330; *See also Kaye v. Hughes & Luce, LLP*, No. 06-01863, 2007 WL 2059724 *9 (N.D. Tex. July 13, 2007).
[9] *Andrew & Kurth, L.L.P. v. Family Snacks, Inc. (Matter of Pro-Snax Distributors, Inc.)*, 157 F.3d 414, 426 (5th Cir. 1998).
[10] *In re New Towne Development Group, L.L.C.*, No. 09-10029, 2010 WL 1451480 *2 (Bankr. M.D. La. Apr. 9, 2010) (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeson*, 489 U.S. 87,90, 109 S.Ct. 939, 943, 103 L.Ed.2d 76 (1989); *Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994)).
[11] *New Towne Development*, 2010 WL 1451480 *2.
[12] *Matter of Babcock & Wilcox Co.*, 526 F.3d 824, 827 (5th Cir. 2008).

Applying this two step analysis to BHBM's Compensation Application, it becomes clear that BHBM has not only failed to prove that its fees/expenses rendered any material benefit to the Debtor's estate, but has also failed to show that those fees/expenses are "reasonable" under the lodestar and *Johnson* factors. Put simply, BHBM's Compensation Application should be denied as presented before this Court.

### 1. BHBM fails to prove any actual or necessary fees, much less any "identifiable, tangible and material benefit" to the estate.

At no time in its Compensation Application does BHBM assert that its fees/expenses were either "actual and necessary" or that those services rendered an "identifiable, tangible and material benefit" to the Debtor's estate. Instead, BHBM ignores this inquiry entirely and focuses, in passing, on the *Johnson* factors. For this reason alone, BHBM fails to meet its burden of proof under Section 330 and its Compensation Application should be denied, *in toto*.

Additionally, the invoices that BHBM submitted in support of its Compensation Application are so vague or are so heavily redacted[13] that it is impossible to determine what services were even being rendered to the Debtor in the first place. This lack of clarity not only fundamentally undermines BHBM's Compensation Application, but also runs afoul of Local Rule 2016-1(b)(6), which mandates that every application for compensation **shall** include

> . . . a detailed listing of all time spent by the applicant's professional and other personnel for which compensation is sought, including . . . the tasks performed and other matters related to the service for which compensation is sought without compromising privileged information. Time entries describing services as

---

[13] *See e.g.* "Review of Research" (DML for 1.5 hrs), pg. 2, Exhibit A, Part 1; "Conference with Steve Schott," (DML for 1.5 hrs), pg. 2, Exhibit A, Part 1; "Research . . ." (DML for 1.25 hrs), pg. 11, Exhibit A, Part 1; "Continued research concerning . . . Conducted research . . ." (DTL for 4.00 hrs), pg. 11, Exhibit A, Part 1; "Work on memorandum . . ." (SPS for 2.00 hrs), pg. 26, Exhibit A, Part 1; "Work on . . ." (SPS for 2.20 hrs), pg. 27, Exhibit A, Part 1; "Work on . . ." (SPS for 3.00 hrs), pg. 28, Exhibit A, Part 1; and an entry that is entirely blacked out for SPS for 5.50 hrs., pg. 31, Exhibit A, Part. 1. To the extent that BHBM asserts its entries are subject to a privilege or other protection, Hancock Bank would ask that this Court conduct an *in camera* review of the entries before making a determination on the Compensation Application.

"research," "telephone call," "court appearance," "conference with client" or "conference with attorneys," without more detail are insufficient.[14]

Even more troubling is that a review of the entries that are descriptive proves that BHBM is seeking payment for a large amount of services that either: (1) were rendered *prior to* March 2, 2010, and hence are not only entirely outside the scope of BHBM's Compensation Application so as to not be payable from estate assets,[15] but should be fully disallowed since they were rendered before BHBM was ever approved for employment,[16] (2) are wholly unrelated to the administration of this Case,[17] or (3) were rendered in connection with duplicative and fundamentally flawed pleadings which provided no benefit to the estate. This final point deserves special attention given the relatively little progress that has been made in this Case since it was first filed on March 2, 2010.[18] Among the issues extensively briefed by the Debtor, two stick out as particularly wasteful and non-beneficial to the estate: (a) Debtor's persistent challenge to venue, and (b) the Debtor's repetitive attempts to retain an accountant.

Specifically, no compensation should be awarded for the amount of litigation and consternation that has been caused by the Debtor's strategic decision to file its bankruptcy in the Eastern District, a forum which (as Judge Lemmon recently affirmed) was wholly improper under the circumstances. Indeed, in contesting Hancock Bank's efforts to transfer this Case to its

---

[14] *See also New Towne Development*, 2010 WL 1451480 at *4; *In re Hamilton Hardware Co.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981) (denying compensation request due to inadequate time records, finding that there was "no indication anywhere of the nature and substance of the telephone calls or letters; the matter researched and the result of the research is not disclosed.").

[15] *See generally* pgs. 1-2, 20-22, Exhibit A, Part 1 (entries dating as far back as February 1, 2010).

[16] *In re Charis Hospital, LLC*, 360 B.R. 190, 200 (Bankr. M.D. La 2007). As mentioned above, Judge Magner entered an Interim Order approving the retention on BHBM on March 8, 2010, six days after the petition for relief was filed.

[17] *See e.g.*, "Review of Hancock's motion to re-open Federal case in middle district" (DML for .75 hrs) and "Review of and Revision of opposition to Hancock motion for TRO," (DML for .75 hrs), pg.7 of Exhibit A, Part 1; "Review of USC 105 use to protect LCH" (DML for .75 hrs), pg. 8 of Exhibit A, Part 1; "Receipt and Review Motion by Hancock to re-urge TRO against LaChenaie Holding" (SPS for .30 hrs), pg. 25, Exhibit A, Part 1; "Travel to-from Baton Rouge to attend status conference ordered by Judge Polozola" (JWS for 5.0 hrs), pg. 24, Exhibit A, Part 5.

[18] Indeed, after almost five months in bankruptcy, no final order on cash collateral has been rendered and no plan for reorganization or disclosure statement has been filed.

proper venue, BHBM has filed (to date) the following pleadings on the Debtor's behalf with this Court, the Eastern District Bankruptcy Court, and the Eastern District Court of Louisiana:

1. Objection to Hancock Bank's Motion to Transfer (Doc. No. 10)

2. Notice of Appeal District Court (Doc. No. 115)

3. *Ex Parte* Motion To Stay Pending Appeal (Doc. No. 116)

4. Support Memorandum in Re Motion For Stay Pending Appeal (Doc. No. 117)

5. Notice Regarding Appeal (Doc. No. 120)

6. *Ex Parte* Motion To Stay Pending Appeal Or in the Alternative, for Expedited Consideration (Doc. No. 148)

7. Amended Motion Ex Parte Motion For Stay Pending Appeal (Doc. No. 149)

8. Motion to Expedite Hearing of Motion For Stay Pending Appeal (Doc. No. 150)

9. Motion to Change Venue/Inter-District Transfer-Bankruptcy Pursuant to Bankruptcy Rule 1014(a) (Doc. No. 174)

10. Memorandum/Brief in Support of Motion To Transfer Case Pursuant to Bankruptcy Rule 1014(a) (Doc. No. 175)

11. Ex Parte/Consent Motion to Stay Bankruptcy Proceedings (*In re Advocate Financial, LLC*, No. 2:10-cv-01528-MVL-SS (E.D.La.), Doc. No. 6)

12. Appellant's Brief (*In re Advocate Financial, LLC*, No. 2:10-cv-01528-MVL-SS (E.D.La.), Doc. No. 9)

13. Appellant's Sur-Reply Brief (*In re Advocate Financial, LLC*, No. 2:10-cv-01528-MVL-SS (E.D.La.), Doc. No. 11)

While some of these pleadings were filed after May 31, 2010 and while it is difficult to determine from the invoices how much time was actually spent on each these pleadings, a review of the pleadings themselves reveals many of them to be duplicative and all were wholly unnecessary.[19] Again, Section 330(a)(4)(A) prohibits any award of compensation to BHBM for

---

[19] After all, the Debtor filed three (3) separate *Ex Parte* Motions for Stay Pending Appeal, none of which were appropriate for *ex parte* relief, and all of which failed.

these duplicative filings. BHBM should be compelled to not only account for what portion of its fees/expenses have been spent on challenging venue, but also explain to this Court how its failed attempts to impede the progress of this reorganization (by virtue of the repeated stay requests) and efforts to move this Case back to an improper venue conveyed any material benefit to the estate.

Secondly, the Debtor filed three (3) separate motions to employ an accountant before it finally was able to find one that was acceptable to the Court. Even though Judge Magner informed counsel for the Debtor at the March 12, 2010 hearing on Hancock Bank's Cash Collateral Motion that she would not approve the retention of a *foreign national* as an accountant, the Debtor persisted in this effort and filed a motion to employ Irena Revert, a French citizen, (Doc.No. 49). Following a status conference with Judge Magner, the Debtor unilaterally withdrew that motion (Doc. No. 66). The Debtor then tried to employ Malcolm M. Dienes, LLC (Doc. No. 67) despite the fact that that accounting firm already represented some of the Debtor's *own account debtors*, a conflict of interest which ultimately resulted in Judge Magner denying the same. (Doc. No.101). The Debtor was able to finally obtain approval of an acceptable local accountant (Kernion T. Schafer) on June 30, 2010.[20] Yet, a review of the Statement of Financial Affairs most recently filed by the Debtor on July 20, 2010, continues to indicate that the Debtor is employing *Ms. Irena Revert and Malcolm M. Dienes, LLC* as its accountants.[21] As Section 330(a)(4)(A) makes clear, no compensation shall be awarded for "unnecessary duplication of services, or services that were not— reasonably likely to benefit the debtor's estate, or necessary to the administration of the case." BHBM should be required to not

---

[20] Order Granting Application to Employ Kernion T. Schafer as Accountant, *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 183).
[21] Statement of Financial Affairs (Amended), *In re Advocate Financial, LLC*, No. 10-10767, (Doc. No. 223, Question No. 19).

only account for what portion of its fees/expenses it spent on retaining an accountant and obtaining approval for the same, but also explain to this Court how any of those efforts conveyed any material benefit to the estate.

Finally, BHBM's invoices fail to explain how any BHBM's services with regard to prosecution of the Debtor's various collection matters have benefited the estate. Indeed, BHBM fails to even identify what actions are pending, much less the anticipated recovery on the same, the anticipated cost of achieving that recovery, or when any net recovery may occur. Hancock Bank has taken it upon itself to pull some of the pleadings from the Debtor's collection actions and a comparison of those pleadings to the invoices submitted by BHBM reveals that, in some instances at least, the fees being charged by BHBM are coming close to outweighing any ultimate benefit that the estate may realize should the Debtor finally collect on the same.

Specifically, BHBM indicates that as of May 31, 2010 it has already incurred $7,745.50 in prosecuting the actions involving the Mercier Law Offices and the Charbonnet/Glenn Armentor Law Corporation[22] on behalf of the Debtor. According to the pleadings from these actions, Advocate has expended this amount in a *quantum meruit* dispute with the attorney who took over the litigation, John Charbonnet.[23] The total recovery that must be split between Mercier's bankruptcy estate (which presumably goes to the Debtor) and Charbonnet is $26,798.98, but a significant portion of that amount ($11,132.32) is for reimbursement to the competing law firms for expenses, leaving the true amount in dispute to be *only a portion of the remaining $15,666.66*. Whether BHBM has incurred additional fees on these actions since May

---

[22] *In re Kent Mercier, Maria Janssen Mercier*, No. 09-51515 (Bankr. W.D. La. May 3, 2010) (Doc No. 75).
[23] Comprised of $7,472.50 for *In re Kent Mercier, Maria Janssen Mercier*, Case No. 09-51515, United States Bankruptcy Court for the Western District of Louisiana; $309.00 for *Advocate Financial v. John Paul Charbonnet*, Case No. 09-849, United States District Court for the Middle District of Louisiana; and $9.00 in *Claudene Abraham, et al v. Kent Mercier, APLC*, No. 08-6608, 15th JDC, Parish of Lafayette, State of Louisiana.

31 is entirely unclear, but this dispute remains pending and BHBM should be called upon to explain the identifiable, tangible and material benefit of each of the collection actions.

        **2.    BHBM fails to prove that the amount of requested compensation is reasonable.**

As indicated above, BHBM spends little time discussing the *Johnson* factors and fails to ever consider the lodestar calculation. Until BHBM produces more descriptive and complete time entries, it is utterly impossible for anyone to actually apply the *Johnson* factors so a determination of "reasonableness" may occur. On its face and for the same reasons discussed above, BHBM's analysis is incomplete and fails to prove that they are entitled to any compensation whatsoever.[24]

    **B.**    ***BHBM is not a "disinterested person" and its Request for Compensation should be Denied.***

Section 328(c) of the Bankruptcy Code provides, in relevant part,

> . . . the court may deny allowance of compensation of services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section327 or 1103, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.[25]

In apparent recognition of this statute (and the requirements of Section 327), Dennis LaBorde, a partner at BHBM, executed an affidavit in support of the Application to Employ, wherein he swore, under oath, as follows:

> Based on the conflicts search, to the best of my present knowledge, information, and belief, no member, associate, or counsel practicing in my firm represents or holds any interest adverse to

---

[24] *New Towne Development*, 2010 WL 1451480 at *4.
[25] 11 U.S.C. §328(c); *In re Humble Place Joint Venture*, 936 F.2d 814, 818-819 (5th Cir. 1991) ("In order to receive compensation as counsel for the debtor, an attorney must be disinterested and may hold no interest adverse to the bankruptcy estate.")

the Debtor or to the estate, and all members, associates, and counsel practicing in my firm are "disinterested persons"...[26]

Mr. Laborde goes on to declare,

In compliance with the disclosure requirements under Rule 2014 of the Federal Rules of Bankruptcy Procedure, the following is a list of categories of entities that BHBM has searched to check and clear potential conflicts of interests in this case:

(a) The Debtor;

(b) The Debtor's nondebtor affiliates;

\*   \*   \*

(d) The equity holders of the Debtor

\*   \*   \*[27]

On the basis of this sworn testimony, Judge Magner approved the retention of BHBM on April 21, 2010.

What Mr. Laborde fails to disclose to the Court is that in addition to representing the Debtor, BHBM was also representing *at that time* the Debtor's sole equity owner, La Chenaie Holding, L.L.C. ("La Chenaie"), in various proceedings in both state and federal court, including litigation in which La Chenaie was defending its own guaranty of the Debtor's indebtedness to Hancock Bank.[28] BHBM continues to represent La Chenaie in that and other matters. A review of the Debtor's own Schedules and SOFA reveals that the Debtor is also significantly indebted to La Chenaie in excess of $3,907,139.00 and that La Chenaie is the recipient of likely preferential transfers totaling at least $3,474,493.87.[29] As counsel for Hancock Bank made clear to this

---

[26] Application to Employ Dennis M. Laborde, Stephen P. Schott as Attorneys for Debtor, *In re Advocate Financial, LLC,* No. 10-10767 (Bankr. M.D. La. May 25, 2010) (Doc. No. 12).
[27] *Id.*
[28] *Hancock Bank of Louisiana versus Advocate Financial, LLC et al.,* Case No. 10-132-FJP-SCR, United States District Court for the Middle District of Louisiana.
[29] Summary of Schedules, *In re Advocate Financial, LLC* (Bankr. M.D. La. July 19, 2010) (Doc. No. 221); Amended Statement of Financial Affairs, *In re Advocate Financial, LLC* (Bankr. M.D. La. July 20, 2010) (Doc. No. 223).

Court during the initial hearing on its Motion to Appoint a Trustee, the Debtor's obligations to La Chenaie, La Chenaie's liability for the Debtor's obligations to Hancock Bank, and La Chenaie's likely liability to the estate, not to mention La Chenaie's own fiduciary duties to the Debtor as its sole member, makes their interests so convoluted and irreconcilable that its hard to imagine how a conflict of interest does not exist between La Chenaie and the Debtor.

The very existence of this conflict and its extension to BHBM is further illustrated by reviewing the invoices submitted by BHBM in support of its Compensation Application. Specifically, besides numerous time entries related to the work done solely for La Chenaie,[30] at least one time entry relates to time that BHBM spent representing both La Chenaie and the Debtor in a status conference before Judge Polozola in the Middle District.[31] Counsel for Hancock Bank was present at this status conference and can attest that approximately half of the conference involved matters related *only to La Chenaie*.[32] Yet, BHBM bills the full five hours of its time to the Debtor. This specific instance, along with the numerous entries reflecting services rendered in connection with matters only involving La Chenaie, not only highlights the inherent conflict of interest between La Chenaie and the Debtor (and BHBM's representation of both) but begs the question: How does BHBM's representation of La Chenaie benefit this Debtor's reorganization? BHBM's failure to reveal this conflict to the Court fundamentally undermines its request for compensation currently pending before this Court.[33]

---

[30] See Footnote 17, *supra*.
[31] "Travel to-from Baton Rouge to attend status conference ordered by Judge Polozola" (JWS for 5.0 hrs.), pg. 24, Exhibit A, Part 5.
[32] Status Conference, *Hancock Bank of Louisiana vs. Advocate Financial, LLC et al.*, No. 10-132-FJP-SCR, (M.D. La. May 27, 2010), *Locke Meredith & Associates, APLC, v. Advocate Financial, LLC et al.*, No. 3:10-cv-00257-FJP-CN (M.D. La. May 27, 2010) (Doc. No. 5).
[33] *Collier on Bankruptcy* 327.04 (2010) (*citing In re Big Rivers Elec. Corp.*, 284 B.R. 580, 598 (W.D. Ky. 2002)); *In re Plaza Hotel Corp.*, 111 B.R. 882, 890 (Bankr. E.D. Cal. 1990) (debtor's counsel disqualified because counsel also represented the owner-guarantors in their guaranty litigation.); *In re Kendavis Industries International, Inc*, 91 B.R. 742 (Bankr. N.D. Tex. 1988) (debtor's counsel only awarded 50% of requested compensation due to its failure to disclose representation of the debtor's principal.); *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th

Suffice it to say, BHBM's representations of La Chenaie make it anything, but a "disinterested person" in this Case.[34] Given the clear provisions of Section 328(c), this Court should deny BHBM's Compensation Application.

### C. *BHBM's Compensation Application's fails to account for the $50,000.00 retainer.*

BHBM's Application to Employ also included a schedule of their hourly billing rates and declared that BHBM had already received a "retainer in the sum of $50,000.00 from the Debtor to serve as security for services to be rendered prepetition and the filing fees for the bankruptcy case."[35] The Application to Employ also stated that the "amount of attorneys' fees and costs that were incurred for [BHBM's] prepetition services rendered and expenses incurred on behalf of the Debtor was approximately $21,000.00."[36] At the April 21, 2010 hearing approving BHBM's retention, Judge Magner instructed BHBM to specifically account for this retainer and any other prepetition services in their first compensation application.[37] Additionally, Local Rule 2016-1(b)

---

Cir. 1986) (*quoting Brennan's Inc. v. Brennan's Restaurant, Inc.*, 590 F.2d 168, 173-74 (5th Cir. 1979) (The courts of the Fifth Circuit are "sensitive to preventing conflicts of interest and [that] requires a 'painstaking analysis of the facts and precise application of precedent.'")).
[34] *In re Humble Place Joint Venture*, 936 F.2d at 819.
[35] Application to Employ Dennis M. Laborde, Stephen P. Schott as Attorneys for Debtor at 8, ¶24, *In re Advocate Financial, LLC,* No. 10-10767 (Bankr. M.D. La. May 25, 2010) (Doc. No. 12).
[36] *Id.*
[37] Transcript of Proceedings at 5-6, *In re Advocate Financial, LLC,* No. 10-10615 (Bankr. E.D. La. April 21, 2010) (Doc. No. 130), wherein the following exchange took place:

> THE COURT: As I appreciate it, there was a retainer paid for $50,000 pre-petition, correct?
> MR. LABORDE: That is correct, Your Honor.
> THE COURT: Okay. And there were pre-petition fees incurred by the Debtor of approximately $21,000?
> MR. SCHOTT: I think that's approximately correct, Your Honor, yes.
>
> \*     \*     \*
>
> THE COURT: And I assume that those were offset from the retainer pre-petition?
> MR. LABORDE: No, Your Honor.
> THE COURT: Oh, they weren't?
> MR. LABORDE: The retainer is sitting in the trust account.
> THE COURT: Okay.
> MR. LABORDE: And of course, we wouldn't touch that without Court authority and you know, the U.S. Trustee's –
> THE COURT: All right, so you have the whole fifty?

requires that every application for compensation filed by an attorney disclose any retainer the applicant has received, the amount of that retainer which has been applied to payment of any previously approved fees and expenses, and the balance of the original retainer.[38]

Despite its receipt of a $50,000 retainer and the clear requirement to disclose and account for the same, BHBM fails to mention the retainer anywhere within its Application. Without any accounting for that retainer, it is impossible to determine how (or if) BHBM intends to apply the $50,000.00 and/or whether those applications will benefit the estate. Until this omission is remedied and the use of the retainer funds is fully explained to this Court, BHBM's Compensation Application should be denied and BHBM should be prohibited from using/applying any portion of the retainer to its current fees/expenses.

### D. *Hancock Bank does not Consent to the Use of its Cash Collateral.*

Finally, as indicated above, no final order has been entered approving the Debtor's use of cash collateral in this case. Clearly, in light of the above, Hancock Bank does not consent to the Debtor's use of any cash collateral to pay any compensation award to BHBM. Until the Debtor obtains permission from this Court to use cash collateral to pay any compensation award to BHBM (whether interim or otherwise) by proving to this Court that Hancock Bank is adequately protected, no payments may be made to BHBM from any of the cash collateral.[39] Because the only cash in possession of the Debtor is Hancock Bank's cash collateral, Hancock Bank requests that any order approving any compensation to BHBM specifically prohibit the Debtor's payment of the fees awarded.

---

    MR. LABORDE: Yes, Your Honor.
    THE COURT: All right, then the only comment I have on your application is that when you file your first fee application, which I assume you will since you haven't paid yourself, you'll include the $21,000 in your disclosure and your request.
    Mr. LABORDE: Yes, Your Honor.

[38] Local Rule 2016-1(b)(2) and (b)(4).
[39] 11 U.S.C. § 363.

## CONCLUSION

BHBM makes no effort to prove that its fees/expenses in representing this Debtor were either actually incurred for the benefit of the estate, were necessary and/or are reasonable under the circumstances. Furthermore, by also representing Debtor's owner and solidary obligor, BHBM is not a disinterested person (as it claims) and its continued retention in this matter is suspect, not to mention its request for compensation. Additionally, despite clear instructions to do so, BHBM fails to account for, or even mention, the $50,000.00 retainer it received from the Debtor prepetition. Finally, even if this Court approves any portion of BHBM's Compensation Application, the Debtor has no ability to pay the same and any order should note that limitation. For these reasons, BHBM's Compensation Application should be denied.

Respectfully submitted,

_____
Stephen P. Strohschein, LA Bar Roll # 12541
E. Stewart Spielman, LA Bar Roll #28766
Lillian Luffey Paxton, LA Bar Roll #31847
**McGlinchey Stafford, PLLC**
One American Place, Fourteenth Floor
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
Facsimile: (225) 343-3076

ATTORNEYS FOR HANCOCK BANK OF LOUISIANA